## Bolgen *v.* Progressive Composition Co., Appellant.

Argued April 18, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lloyd J. Schumacker,* with him *Schumacker and Lunkenheimer,* for appellants.

*Leonard M. Sagot,* with him *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot,* for appellee.

OPINION PER CURIAM, May 21, 1968:

Plaintiff, Karl Bolgen, instituted an action in equity against the defendant corporations to recover certain moneys he had paid to them on account of the purchase by him of three Chevrolet trucks. At the hearing the action was treated as though it had been formally transferred to the law side of the court and was thus heard as a nonjury case. After trial, a verdict was entered in favor of the plaintiff in the sum of $8,720 plus interest. Defendants filed exceptions which were dismissed; and they now appeal.

The record supports the following findings: In order to avoid unionization of their employees, the defendant corporations, in 1957, induced the plaintiff, to do their hauling as an independent contractor. They entered into an agreement on April 19, 1957 whereby the defendants were to purchase a Chevrolet ½ ton sedan delivery truck for $1,835.08 which they would then resell to the plaintiff for the same amount, allow-

ing the plaintiff to pay therefor in weekly sums of at least $20. In addition, plaintiff was to receive payment for his services. The written agreement further provided: "If for any reason a condition arises whereby this contract is to be cancelled, we [that is, the defendants] agree to either let Karl Bolgen pay us the balance owing on the truck, and let him keep the truck entirely, or we give him the money he has contributed toward the purchase, and we keep the truck. However, it is further understood that when the full amount has been paid by Karl Bolgen, the truck is entirely his."

In the following years other vehicles were purchased without execution of a formal agreement but with an oral understanding that the terms previously agreed upon would apply.

In 1959 and 1960, two trucks and a van were purchased and the plaintiff paid $20 per week on each of the vehicles. He also paid $40 per week as repayment of loans and insurance premiums, thus making a total weekly payment of $100.

On May 14, 1962, the plaintiff ceased paying on the purchased vehicles as he was unable to do so, although he continued to work for the defendants receiving compensation for his services. In September of that year, the plaintiff asked for reimbursement of the amount he had paid toward purchase of the three vehicles, relying on the option contained in the above-quoted provisions of the written agreement. The defendants refused to pay back the money and the plaintiff filed suit. Later, by stipulation of the parties, the vehicles were sold, for a total sum of $1800.

The defendants contend in this appeal that the plaintiff is entitled to collect only $1,800 less $1,635.75 which defendants claim the plaintiff owes them on a running account. The defendants argue that the plain-

tiff cannot elect to obtain a return of the moneys he paid since they became his under the agreement. They thus seek to apply the rule that the plaintiff's weekly payments were applicable in discharge of the oldest debts; that is, the weekly payments could not be allocated among the several vehicles but were to be applied in discharge of the purchase remotest in time. In this they rely on *Souder v. Schechterly,* 91 Pa. 83 (1879) where this court said: "The general rule is that a debtor may appropriate his payments as he sees fit at the time of making them: *but if neither he nor his creditor makes any specific application of them the law will do so.* In the case of running accounts, composed of various items of debit and credit occurring at different times, *and no special appropriation of the payments is made by either party,* the law will apply the successive payments or credits to the discharge of the debit items antecedently due in the order of time in which they stand in the account; in other words each item of payment or credit is applied in extinguishment of the earliest debit items in the account, until the whole payment or credit is exhausted." (Emphasis supplied).

The credible evidence in this case, however, clearly supports a finding that the parties did make a specific application of the weekly payments—to wit: $20 per week to each of the three vehicles. This finding is buttressed by the fact that no title to any of the vehicles was ever transferred by the defendants to the plaintiff.

The defendants next argue that the plaintiff should not be permitted to extend the time within which he had to elect not to take the vehicles by defaulting on his payments from May 14, 1962 until September 14, 1962 when he chose to exercise his option to obtain return of the moneys paid rather than take title to

144

the vehicles. The answer to this contention is that the defendants were well aware of the terms of their transactions with the plaintiff and, upon his default in payments, they could have taken steps to enforce payment from him, especially since they were paying him for the services he was rendering them at that time.

The judgment of the court below is amply sustained by the credible evidence.

Affirmed.